UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JENNIFER ANDRIACCIO,

                Plaintiff,

v.                                                                                               **DECISION AND ORDER**
                                                                                                               **18-CV-84**
NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

## INTRODUCTION

Plaintiff Jennifer Andriaccio brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of Acting Commissioner of Social Security (the "Commissioner"), which denied her applications for supplemental security income ("SSI") and disability insurance benefits ("DIB") under Title II of the Act. Dkt. No. 1. This Court has jurisdiction over this action under 42 U.S.C. § 405 (g).

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12 (c). Dkt. Nos. 9, 15. For the reasons that follow, the plaintiff's motion is granted, the Commissioner's motion is denied, and the matter is remanded for further administrative proceedings.

## BACKGROUND

On March 2, 2013, and July 16, 2013, the plaintiff protectively filed applications for DIB and SSI with the Social Security Administration ("SSA") alleging

1

disability since March 1, 2013. Tr.[1] 366-67, 370-74. On December 18, 2013, the plaintiff's claims were denied by the SSA at the initial level. Tr. 236-57. On July 11, 2016, the plaintiff, her attorney, her mother Cynthia Andriaccio, and a vocational expert ("VE") appeared and testified before Administrative Law Judge, Brian LeCours ("the ALJ"). Tr. 188-233. On July 21, 2016, the ALJ issued a decision finding the plaintiff was not disabled within the meaning of the Act. Tr. 8-22. Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on November 16, 2017. Tr. 1-7. Thereafter, the plaintiff commenced this action seeking review of the Commissioner's final decision. Dkt. No. 1.

## LEGAL STANDARD

I.  **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation

---

[1] References to "Tr." are to the administrative record in this matter.

marks omitted); *see also Wagner v. Sec'y of Health and Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

**II.     Disability Determination**

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental

3

work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed the plaintiff's claim for benefits under the process described above. At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since March 1, 2013, the alleged onset date. Tr. 13. At step two, the ALJ found that the plaintiff has the following severe impairments: affective disorder; anxiety disorder; and poly-substance abuse disorder. *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any listings impairment. Tr. 14.

Next, the ALJ determined that the plaintiff retained the RFC to "perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant's work must consist of unskilled tasks, work which requires little or no judgment to do simple duties that can be learned on the job in a short period of time and the claimant can have only occasional interaction with the general public, co-workers, and supervisors." Tr. 16.

At step four, the ALJ relied on the VE's testimony and found the plaintiff retained the RFC to perform her past relevant work as a "food preparation worker" and "table busser." Tr. 20. Because the ALJ determined that the plaintiff's ability to perform work at all exertional levels was compromised by non-exertional limitations, the ALJ made an additional step-five inquiry to determine the extent to which the non-exertional limitations erode the occupational base of unskilled work at all exertional levels. Tr. 21. The ALJ relied on the VE's testimony and found that other work exists in significant numbers in the national economy for an individual with the plaintiff's RFC, age, high school education, and unskilled work experience. *Id.* Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act from March 1, 2013, through July 21, 2016. Tr. 22.

**II.    Analysis**

The plaintiff contends the ALJ improperly determined her RFC where he relied on medical opinions from a consultative examiner who examined the plaintiff once and a non-examining state agency physician who reviewed the plaintiff's medical

5

records for the initial disability determination in December of 2013.[2]  Dkt. No. 9, pp. 14-19.  The Commissioner contends that the decision is supported by substantial evidence and that the ALJ reasonably relied on the only medical opinions in the record.  Dkt. No. 15, pp. 10,13.  For the reasons set forth below, this Court finds that the ALJ's assessment of the plaintiff's RFC was unsupported by substantial evidence and that this error necessitates remand for further administrative proceedings.

**A. The ALJ's Assessment of the plaintiff's RFC**

In deciding a disability claim, the ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision."  *Id.*  However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F.Supp.3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).  "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence."  *Dennis v. Colvin*, 195 F.Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation omitted).

Of particular relevance to this case, "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding."  *Camille v. Colvin*, 104 F.Supp.3d 329, 343

---

[2] The plaintiff submitted additional arguments which the Court does not address because it finds remand is warranted based on the argument discussed herein.

(W.D.N.Y. 2015). "A medical opinion may be stale if it does not account for the claimant's deteriorating condition." *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017). However, a more dated medical opinion may constitute substantial evidence where it is supported by the record as a whole notwithstanding its age. *See Andrews v. Berryhill*, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (holding that the ALJ did not err in relying on dated opinions where there was no indication the plaintiff's "condition had significantly deteriorated after the issuance of … [the] opinions such that they were rendered stale or incomplete").

Here, the plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence because it was based exclusively on stale medical opinions from Janine Ippolito, Psy. D. ("Dr. Ippolito") and J. Dambrocia, Phd. ("Dr. Dambrocia"). This Court agrees, for the reasons discussed below.

**B. Dr. Ippolito**

On November 26, 2013, Dr. Ippolito performed a one-time consultative psychiatric examination of the plaintiff shortly after her application was filed and nearly three years before the ALJ issued his decision. Tr. 565-569. Dr. Ippolito noted the plaintiff's depressive and anxiety-related symptomatology including: dysphoric moods, fatigue and loss of energy, social withdrawal, loss of usual interests, passive thoughts of death, apprehension, worry, nervousness, a tendency to become overwhelmed, and discomfort in crowds of people. Tr. 566. The plaintiff reported that she had abused

alcohol, cocaine, and opiates earlier in 2013 and that she last had suicidal thoughts in June. *Id.* Dr. Ippolito noted that the plaintiff had mildly impaired attention and concentration, due to some problems with math skills, based on the simple math tests he administered. Tr. 567. She found the plaintiff had fair insight, fair judgment, and opined that she would need assistance to manage her money due to her history of substance abuse. Tr. 568-69. Dr. Ippolito diagnosed the plaintiff with major depressive disorder, recurrent, moderate; anxiety disorder; and polysubstance dependence (cocaine marijuana, opiates, alcohol), in partial remission as she had reportedly abstained from using for several months at that point due to her current pregnancy. Tr. 568. Ultimately, Dr. Ippolito issued the following medical source statement to assist the SSA in making its initial disability determination for the plaintiff:

> "[The plaintiff] presents as able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, and relate adequately with others with no evidence of limitations. She can make appropriate decisions and appropriately deal with stress with mild limitations. These limitations are due to her current emotional distress and history of substance abuse. The results of the present evaluation appear to be consistent with psychiatric and substance abuse problems, but in itself this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis."

Tr. 568.

### C. Dr. Dambrocia

On December 16, 2013, Dr. Dambrocia completed a mental residual functional capacity assessment for the plaintiff at the request of the SSA. Tr. 241-45. Dr. Dambrocia did not examine the plaintiff but evaluated her medical record as of that

8

date including, primarily, the consultative psychiatric examination performed in November 2013, by Dr. Ippolito. *Id.* Dr. Dambrocia found that the plaintiff had sustained concentration and persistence limitations. Tr. 242. Specifically, that the plaintiff would be moderately limited in the ability to complete a normal workday and work week without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* Dr. Dambrocia also found that the plaintiff would have moderate limitations with interacting appropriately with the general public, in her ability to respond to changes in the work setting, and in her ability to accept instructions and respond appropriately to criticism from supervisors. Tr. 243. Dr. Dambrocia noted the plaintiff's history of substance abuse as recent as 2013 and that the plaintiff was currently enrolled in substance abuse treatment at Horizon.[3] Tr. 243. Dr. Dambrocia referenced the plaintiff's mental health records from October 2013, which indicated that her mental health symptoms were stable with the exception of dysthymic mood and restricted affect, and that there were no substance abuse concerns. *Id.* Dr. Drambrocia opined the following:

> "Overall, based on psychiatric/cognitive limitations, the claimant is viewed as able to understand and remember instructions and sustain attention and concentration for tasks. Given reports and history, the claimant may have difficulties relating with others and/or adapting to changes; the claimant's ability to deal with co-workers and the public would be somewhat reduced, but adequate to handle brief and superficial contact. Similarly, her ability to tolerate and respond appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision in the customary work setting."

Tr. 244.

---

[3] Horizon treatment notes reflected that the plaintiff was discharged from treatment in May 2013 after missing sessions and had positive toxicology screens throughout her treatment. *Id.*

9

Neither Dr. Ippolito's nor Dr. Dambrocia's opinions considered the following two years of the plaintiff's medical record from 2014 through 2016, including multiple drug relapses, intentional overdoses, mental health treatment records, and chemical dependency treatment records. Notably, the plaintiff was six months pregnant and generally compliant with mental health and chemical dependency treatment due to her pregnancy at the time Dr. Ippolito and Dr. Dambrocia rendered their medical opinions. Although during her pregnancy the plaintiff was generally compliant with her mental health treatment and appeared to have abstained from abusing drugs and alcohol, following the birth of her daughter in February of 2014, her situation changed significantly.

**D. Drug Relapses and Overdoses from 2014 through 2016**

From January 2014, through May 2014, the plaintiff received mental health treatment services including weekly individual counseling sessions and monthly sessions with a psychiatrist. Following the birth of her daughter in February, the plaintiff reported increased depression symptoms to her psychiatrist, Dr. Michael Godzala ("Dr. Godzala"), who noted the plaintiff's fair insight and judgment upon increasing her psychiatric medication prescription. Tr. 1172. Dr. Godzala adjusted the plaintiff's medications again in April of 2014, and referred the plaintiff to another psychiatrist, Dr. Meliton Tanhehco, M.D. ("Dr. Tanhehco") for a medication evaluation. Tr. 823-25. Dr. Tanhehco found the plaintiff's concentration, attention, and memories were fair; judgment and insight partial; and opined that her differentials would include major

depression, history of ADHD, possible bipolar disorder, and history of cocaine and opiate abuse. Tr. 826.

In May 2014, less than a year after Dr. Ippolito and Dr. Dambrocia rendered their opinions, and just three months after the plaintiff gave birth to her daughter, she relapsed on opiates. Tr. 840-41, 847, 1198. In June 2014, Dr Tanhehco adjusted the plaintiff's psychiatric medications and prescribed a mood stabilizer. Tr. 839, 859. In July 2014, the plaintiff relapsed again and was arrested for Grand Larceny after her parents discovered that she had stolen $15,000 worth of items from their home. Tr. 848, 850. On July 30, 2014, the plaintiff attended therapy with her father and admitted to taking as many Lortabs as she could obtain in a day. Tr. 850.

Although the plaintiff was scheduled to enter inpatient treatment in early August 2014, she did not follow through with admission. Tr. 852. Throughout August and September of 2014, the plaintiff frequently failed to attend therapy appointments although she reported that she was in outpatient treatment and participating Suboxone treatment. Tr. 871, 874-75. On September 3, 2014, Dr. Tanhehco noted that the plaintiff appeared calm and collected as she had been taking her psychiatric medications as prescribed in addition to Suboxone. Tr. 876, 891. However, by the end of September and early October, the plaintiff began missing her therapy appointments. Tr. 878-879. On October 21, 2014, the plaintiff met with her counselor and reported feeling very stressed and hopeless but she denied lethality. Tr. 883-84.

In November 2014, after missing multiple therapy appointments, including an appointment with her psychiatrist, Dr. Tanheco, the plaintiff abruptly stopped taking her psychiatric medications against medical advice. Tr. 905-906. By the end of November, early December, the plaintiff restarted her psychiatric medications after becoming ill but she told her counselor that she wished to discontinue mental health services entirely. Tr. 907. In December 2014, the plaintiff relapsed for the third time that year, the plaintiff was referred for more intensive mental health and chemical dependency services where she reported that she was abusing opiates (15-20 Lortabs per day) and cocaine (6-10grams per week). Tr. 911.

In early October 2015, the plaintiff relapsed again on cocaine. Tr. 923. Child Protective Services was notified and removed her two-year-old child from her home. Id. Then, the plaintiff overdosed on Seroquel (one of her prescription psychiatric mediations) while using cocaine and was treated at DeGraff Hospital. Tr. 923. The plaintiff continued to use cocaine in November 2015 and was incarcerated for violating her treatment conditions imposed by Buffalo Drug Court. Tr. 948, 1293, 1346.

In March 2016, the plaintiff relapsed again on cocaine and intentionally overdosed on Benadryl. Tr. 1396. Oscar Lopez, M.D. ("Dr. Lopez"), the psychiatrist who examined the plaintiff while she was hospitalized at Eastern Niagara Hospital, found the plaintiff had poor judgment and insight and diagnosed her with substance abuse disorder (cocaine and alcohol), major depression, and ADHD. Tr. 1413-4. Dr. Lopez also noted the plaintiff's continued suicidal ideation and referred her for further

psychiatric treatment. Tr. 1414. The plaintiff was subsequently psychiatrically hospitalized from March 9, 2016 to March 16, 2016 in BryLin. Tr. 136, 1412, 1435. In April 2016, the plaintiff was discharged from mental health and chemical dependency treatment through Horizon Health Services because she was unable to follow through with treatment recommendations. Tr. 136. In May 2016, the plaintiff started outpatient chemical dependency treatment through BryLin and reported that she would restart mental health counseling with Counselors Corner in June. Tr. 1499, 1514.

**B. The ALJ's RFC Determination is Unsupported by Substantial Evidence.**

Because Dr. Ippolito's and Dr. Dambrocia's opinions were rendered in November and December of 2013, they do not address the following three years of the plaintiff's medical evidence in the record. This Court finds that by relying exclusively on Dr. Ippolito's and Dr. Dambrocia's stale opinions in assessing the plaintiff's RFC, the ALJ failed to consider the plaintiff's highly relevant medical records from 2013 through 2016.

In assessing the plaintiff's RFC, the ALJ accorded "significant weight" to Dr. Ippolito's 2013 opinion, stating that it was "supported by her own examination of the plaintiff as well as the medical evidence of record." Tr. 20. The ALJ also stated that Dr. Ippolito's opinion was supported by the opinion of Dr. Dambrocia, although he did not specify the amount of weight he accorded to Dr. Dambrocia's opinion. *Id.* The ALJ did not reference any other medical opinion in support of his RFC determination.

13

In his decision, the ALJ found that the plaintiff suffers symptoms of depression and anxiety, causing mild restrictions in daily living activities, moderate deficits in social functioning, and moderate deficits in concentration, persistence, and pace. Tr. 16. The ALJ noted that the plaintiff's "non-compliance with treatment" and "clinical findings" supported his finding. *Id.* However, the ALJ also concluded that the plaintiff *does not experience significant deficits in concentration* based on Dr. Ippolito's findings that "she was able to recall three of three objects immediately and after five minutes and could remember five digits forward and three backward." *Id.* Then, the ALJ determined that the plaintiff's mental impairments do not preclude her from satisfying the basic mental demands of unskilled work. *Id.* The ALJ reasoned that the plaintiff's reported daily activities, including her socialization with her family and that she wanted to attend vocational training, indicated that she could meet the basic mental demands of unskilled work[4]. *Id.*

Notably, the ALJ omitted Dr. Dambrocia's opinion that the plaintiff would be "*moderately limited* in her ability to complete a normal workday and work week without interruptions from psychologically based symptoms and in her ability to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 242. Here, the VE testified that the plaintiff would be unemployable on a competitive level if she were off-task more than 10 to 15 percent of the time and/or if she were likely to miss more than one or two unexcused absences on a monthly basis. Tr. 230.

---

[4] "Basic mental work-related activity requires an individual to understand, carry out and remember simple instructions; respond appropriately to supervision, coworkers and usual work situations; and deal with changes in a routine work setting." *Id.*

14

Further, the plaintiff's medical records document her inability to comply with treatment recommendations by regularly failing to attend her appointments, take her medications as prescribed to treat her mental illness, and refrain from abusing drugs, even when ordered to do so by a Court.

This Court finds the ALJ's RFC based on the plaintiff's mental impairments is unsupported by substantial evidence. First, Dr. Ippolito's opinion was stale and not based on the complete medical record because it was rendered nearly three years before the ALJ's decision. *See Welsh v. Colvin*, No. 14-CV-6715P, 2016 WL 836081, at *12 (W.D.N.Y. Mar. 4, 2016) (finding that an opinion rendered before the "significant deterioration" of the claimant's mental status could not "constitute substantial evidence supporting the ALJ's determination"); *Jones v. Comm'r of Soc. Sec.*, No. 10-CV-5831(RJD), 2012 WL 3637450, at *2 (E.D.N.Y. Aug. 22, 2012) (holding that the ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition"). Because they were drafted in late 2013, neither Dr. Ippolito's nor Dr. Dambrocia's opinions addressed plaintiff's subsequent relapses, failed efforts at rehabilitation or her suicide attempts.

The medical evidence in the record shows that the plaintiff relapsed five times between 2014 and 2016. Two of her relapses involved intentional suicidal overdoses resulting in psychiatric hospitalizations and the removal of her child from her custody by CPS. The records from 2013 through 2016 demonstrate that the plaintiff

15

was largely unable to comply with both mental health and chemical dependency treatment, even when treatment was court-ordered[5]. He non-compliance with treatment is evidenced by her repeatedly missing or cancelling her treatment appointments, failing to take her psychiatric medications as prescribed, and failing to abstain from drug use. The plaintiff's mental impairments including depression, bi polar I disorder, polysubstance abuse disorder, ADHD, obsessive compulsive disorder, and anxiety are documented at length by her counselors, psychiatrists, and primary care physicians throughout the relevant time period. Accordingly, this Court finds that Dr. Ippolito and Dr. Dambrocia's medical opinions do not provide substantial evidence for the ALJ's decision.

The Court recognizes that where the record reflects only minor impairments, the ALJ may, in his discretion, assess an RFC in the absence of opinion evidence. *See Wilson v. Colvin*, No. 13-CV-6286P 2015 WL 1003933 at *21 (W.D.N.Y. Mar. 6, 2015) (holding that "under certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, an ALJ permissibly can render a common-sense judgment about functional capacity even without a physician's assessment….") (internal quotations and citation omitted). However, "the leeway given to ALJs to make 'common sense judgments' does not typically extend to the determination of mental limitations, which are by their nature 'highly complex and individualized.'" *Lilley v. Berryhill* 307 F.Supp.3d 157, 161 (W.D.N.Y. 2018) (quoting *Nasci v. Colvin*, No. 6:15-CV-0947 (GTS), 2017 WL 902135 at *9 (N.D.N.Y. Mar. 7,

---

[5] The plaintiff was incarcerated in November of 2015 as a result of violating conditions imposed by Buffalo Drug Court.

16

2017); *see also Deshotel v. Berryhill*, 313 F.Supp.3d 432, 435 (W.D.N.Y. 2018) (holding that an ALJ's ability to make common sense judgments does not extend to assessment of mental limitations).

The Commissioner argues that the ALJ's RFC determination should be upheld where the ALJ went above and beyond the medical findings from Dr. Ippolito and Dr. Dambrocia in finding the plaintiff could perform unskilled tasks, work which involved little to no judgment to do simple duties, and work that could be learned on the job in a short period of time. Dkt. No. 15, p. 14. In fact, Dr. Dambrocia's opinion found the plaintiff would be *moderately limited* in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and *moderately limited* in her ability to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 242. By ignoring this part of Dr. Dambrocia's opinion, the ALJ reached a different, seemingly arbitrary conclusion.

The Commissioner contends that Dr. Ippolito and Dr. Dambrocia's opinions were not stale and that the ALJ properly relied on them as the *only* medical opinions in the record. Dkt. No. 15, pp. 13-15. Specifically, the Commissioner argues that while the opinions were issued during a period of sobriety, amidst the plaintiff's pregnancy, the plaintiff "continued to have periods of sobriety," "was sober for much longer periods than she was using drugs," and that Dr. Ippolito's opinion was consistent with the plaintiff's "largely normal mental status and findings throughout the relevant period." *Id.* at 14. The Court rejects these arguments for several reasons. First, the

Commissioner, like the ALJ, is not a medical professional and may not interpret the plaintiff's mental status from examination notes to assess an RFC. Second, the only period of sobriety that the ALJ noted in his decision was when the plaintiff was pregnant and nursing, which was from May 2013 to May 2014. Tr. 19. Further, the Commissioner's after-the-fact explanation as to why the ALJ properly relied upon Dr. Ippolito's and Dr. Dambrocia's medical opinions cannot serve as a substitute for the ALJ's findings. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (a reviewing court may not accept appellate counsel's post hoc rationalizations for agency action).

Because the ALJ in this matter relied on stale opinions and failed to consider the plaintiff's significant mental health record between 2013 and 2016, this Court finds that the Commissioner's decision was unsupported by substantial evidence. Therefore, this case must be remanded for further administrative proceedings during which the record can be appropriately developed.

## CONCLUSION

For the reasons stated above, Defendant's motion for judgment on the pleadings (Dkt. No. 15) is DENIED, and Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is GRANTED to the extent that the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings.

DATED:    Buffalo, New York
               March 14, 2019

                                      <u>*s/ H. Kenneth Schroeder, Jr.*</u>
                                      **H. KENNETH SCHROEDER, JR.**
                                      **United States Magistrate Judge**